Judge Underwood,
not concurring in the foregoing Opinion and Decision of the two members of the Court constituting the majority — presented his own views of the question, as follows :—
In tins case, the defendants have been actually settled upon the land in controversy, for seven years prior to the institution of tiie suit, claiming under the junior grant. The residence upon tiie laud has been continued for seven years; for I cannot admit that the temporary absence ol the family for a few months, to regain their health, is sufficient tó oreak the continuity of residence. It cannot have that effect, any more than a visit to church or to a neighbor’s house would. During the seven years continued residence of the defendants upon the land, the plaintiff Harrison has not had possession, by any actual enclosure or by settlement and residence within the lap, although he took actual possession, and had tenants living upon the land, embraced by his elder grants, on the outside of the junior patent, under which the defendants claim, before the defendants entered and settled within the interference, and has continued, thus in possession ever since his first-entry.
The question is — how far are the defendants-protected -by the act of 1809, to compel the speedy adjustment of land claims?
The circuit court was of opinion, and so instructed the jury, that the defendants were protected to the extent of the interference.
As Harrison claimed the land covered by two adjoining patents, issued in the name of B. A. Allen, under a deed to him, embracing both tracts, and as the junior patent, under which the defendants claim, interferes with the eastern tract of Allen, to the extent of seventy-three acres, and with the western, to the extent of forty-seven acres, and as the dwelling house and all the improvements of the defendants are situated upon the *356 seventy three acres, I am of opinion that the statute of 1809 does not protect the defendants, or confer on them any right to hold the forty-seven acres. My iea,* sons for this, are assigned at length, in the case of Davis vs. Young, [Ante 311.] But as to the seventy three acres, I think the defendants are protected by the statute, and hence I would affirm the-judgment; leaving Harrison at liberty to enter upon, and take possession of the forty-seven acres, when he pleases.
If the present controversy ought to be decided upon those principles of construction in regard to possession, which have heretofore been recognised by this court, as growing out of the doctrines of the common law, Í readily admit it can be shown, that the defendants have no actual possession of any land on the outside of then-enclosures. If the statute requires a pedis possessio in fact, or by construction, of the entire interference, before a settler can bring himself under its protection, I admit that the principles of the cases cited in the opinion delivered, do show, beyond a doubt, that the defendants in this case have no possession, actual or constructive, on the out side of their enclosures. It would therefore follow, that protection here cannot go further than to secure the defendants, to the extent of the land actually enclosed, field and resided on, for more than seven - years prior to the institution of the suit.. For up to those actual enclosures, the principles of construction would put Harrison in the actual possession, and being so possessed, -the limitation of seven years could not run against him. But I apprehend a decision of the controversy upon the foregoing grounds, without looking further, would be to stop short of. that rule which the legislature intended to prescribe by the act of 1809.
The present differs from all the cases heretofore decided, in one important particular. The only pedis possession on any part of the interference, is held by those claiming under the junior patent. They have been actually settled, and residing on the land, for seven years before-suit brought, and during this period, those claiming under the cider patent, have made ncr *357 improvements within the interference. In all the cases heretofore decided, both parties have had parts oí the land common to their respective claims, in actual nosses- , , sion by enclosure. JLhis being the case, tbe law, by construction, put the oldest patentee into possession in fact, up to the fences of his adversary, and of all Ins adversary’s improvements likewise, according to the case, of Hord vs. Bodley. The elder patentee bemg ti*. s in possession, the limitation of seven years would not run against him. But when he has no such possession, I think the limitation, provided as a shield to the settler, may well bar any suit which he institutes.
The beneficent operation of the act of 18(39, does uot depend exclusively upon adjusting questions of possession. That act intended to connect the actual settler with his title, and to protect his tille to the extent of the interference. With this view, the statute declares, “that no action at law, bill in equity, or other process, shall be commenced <3ye. whereby to recover the'title or possession of such land &c.” In this case, the defendants exhibited a title, deducible of record from the commonwealth, and proved such settlement and residence as is required, and yet by running off upon questions of possession, the defendants lose their title to all the land in contest, except so much as they have had enclosed lor seven years. If the senior patentee had been possessed, by visible and tangible improvements within the lap, there would be strong reasons for applying the doctrines of possession founded on the common-law rules, to this case. Such a possession on the part of the senior patentee, would .operate as notice of his claim. It could not, thereafter, be regarded as of that dormant character, unknown to the neighborhood, which the legislature intended to bar. The preamble to the statute clearly proves, that the legislature intended to prohibit bringing such dormant claims forward, and asserting them by suit, to the disturbance of the actual settler. When the junior patentee is alone settled upon the lap, and no other has a visible possession in it, he may be entirely ignorant that there exists any interfering claim, I know of no principle upon which it can be presumed, *358 that he is acquainted with the positions of the lines and corners of others. He may therefore settle, in good uPon the lap; and having done so, if he eontinues to reside and make his home upon it for seven years, 0|-,ject 0f the statute was to protect his possession and title, forever thereafter, against all interfering claims. Such claims are to be considered dormant in respect to, such actual settler, because not asserted within seven years after the settlement was made.
Suppose the elder patentee to be settled on a corner of his fifty thousand acres tract, and thereafter A, B and C should settle respectively on their one hundred acres tracts, under junior patents, which lie entirely within tiie hounds of the fifty thousand acres : why shall tiie senior patentee he permitted to recover all the land in these little tracts, except so much as the occupants have had under fence around their dwellings for seven years? Because, the majority of the court answer, the eider patentee was settled on his tract before the junior paténentees entered and settled. Now, if the senior patentee liad not settled at all upon Jiis tract, and had not taken actual possession of it, by some visible improvement; or had done so after the junior patentees entered and settled ; then the junior patentees would have been protected to the extent of their patents, beyond all doubt. Hence the success of the senior patentee, in the- case supposed, depends entirely upon the fact that he happened to make the first settlement or enclosure upon his tract, although it may not be within five miles of the interfering claims. When the senior patentee commences his suits as plaintiff or complainant-, he is to be favored because he settled on his tract, on the out side of the interference, before the defendants settled on their tracts. Where, I ask, is the foundation for such a preference to be found in the statute? It has no existence there. The legislature has recognised no difference .between the plaintiff or complainant, asserting a paramount legal or equitable title, who lives on the claim set up by him, and a plaintiff or complainant who does not live on his claim. To make á difference is the work of legislation. ' But what policy could lead to such a dis *359 tinction and difference? The settler on the lap supposes, after seven years residence, that the benign policy of his country, has secured his land forever, against all claims which have been slumbering during that period. He is to be told, under the opinion delivered, “you are greatly mistaken, you are protected, to be sure, against non-residents and those who have no settlements or improvements on a tract, large or small, which covers your home ; but if you have a neighbor settled upon a senior patent, which covers you, although lie is settled on the outside of your lines, he may sue you and recover.” There is less apology for the settler upon the senior patent, where he delays suing the occupant of the lap, than there is for a citizen of another state, who may not be possessed in fact of one foot of land in Kentucky. The non-resident may be ignorant of the settlement by the junior patentee upon the land ; such ignorance cannot be imagined in the case of a neighbor. Hence there is no conceivable reason, which could have influenced the legislative mind, to make a distinction in favor of the neighbor, who lies by for seven years, merely because he had made the first settlement on his tract, but on the outside of the interference. And as no such distinction is expressed in the statute, hut has its foundation, if indeed there be any for it, in a presumption, that the legislature did not intend to molest the common law rules relating to possession, I cannot see any reason for making it.
There is no ground on which to base a presumption, that the legislature intended to make an exception in favor of the elder patentee who may have settled first on the outside of the lap. His is truly a dormant claim, so far as it covers the interference, if it be not asserted within seven years, — during all which time, there has beefl a tenant on the land against whom the suit might have been brought. Having been negligent so long., the statute prohibits the institution of suit upon the senior patent, to urecover the title &c.” of the occupant; and if the suit is commenced, the statute gives a bar, to defeat the suit, and the whole suit, to the extent of the conflicting titles. The object of the statute was to prevent all *360 litigation between the conflicting claims, aftér a lapse of seven years, during which the junior patentee was settled on the lap. The very title of the act, to wit, “to compel the speedy adjustment of land claims” shows that the legislature never intended that the senior patentee should delay as long as he pleased, and then litigate the titles by piecemeal, as the occupant from time to time extended his improvements. The legislature looked upon the land common to the interfering claims, as an entire thing, and when it was said in the act, that no suit shall lie commenced” whereby to recover the title &c.” it was as clearly manifested as language could express it, that the entire title to the whole land in contest was meant, and not a part of it. An action of ejectment, although denominated a possessory action, is nevertheless a suit to try the title. It is a fiction for that very purpose, and so used in this case. My idea is, that McDaniel defeats the whole suit, by showing his seven years continued residence upon the lap. The majority of the court allow the action to be defeated so far as it relates to the ground which McDaniel has had under fence, for seven years before suit brought, and allow a recovery as to the residue; thus splitting up the controversy — contrary to the case of White vs. Bates, 7 J. J. Marsh. 545.
Tn the case of Davis vs. Young, the majority of the court applied the statute in behalf of Davis, not because he resided on the land, but because he had extended his fences over the line, and enclosed part of the interference. And in that case, the main argument in support of the construction given to the statute, turns upon the supposed want of wisdom on the part of the legislature, in suffering the fields, orchards &c. to be recovered, when the dwelling house might thereby be rendered useless to its tenants. The court deemed it reasonable to’give such an interpretation of the statute, as would vindicate the legislature from such folly. But in the present case, it seems that the dwelling house and cleared ground, which the defendants have possessed for seven years, are to be secured, and all else taken. Thus the tenants will be left without timber to make repairs, or *361 «ven fire wood to prepare food. It requires but little forecast to see, that the inevitable' consequence of such an interpretation of the statute, in cases like this; will result in the dilapidation and abandonment of the improvements.
The case of Millar vs. Humphries, 2 Marsh. 446, contains an expression, which is supposed to fortify the construction given to the statute in the case of Davis vs. Young, and also the opinion now delivered. The court in speaking of the facts in Millar vs. Humphries, and which shew that the junior patentee had extended his fences over the line, and enclosed a part of the .interference, use the following language : — “ The plaintiff, indeed, may have gained the title to the land enclosed, fifteen years ago, under the act to compel a speedy adjustment of land titles, which forbids all remedy for the recovery of laud after an adverse possession of seven years, under an interfering claim &c.”' It is obvious, that the court overlooked the most important requirement of the statute, to wit, actual settlement. According to the language used, the bar provided by the statute attaches to an adverse possession of seven years, under an interfering claim, without regard to an actual settlement or residence. The court inadvertently followed the previous case of Skyles' heirs vs. King's heirs, 2 Marsh. 387, in which the distinction was not taken between an actual settlement or residence on the land, and a possession acquired and held by other means. In Skyles' heirs vs. King's heirs, the court say : — “If he (meaning a defendant) proves seven years possession, holding under his title, the statute shall aid him, although the plaintiff may be able to shew, by the production of his own title, or that of others, that the title did not; in law, or fact, pass to the defendant.” I was concerned, as counsel, for Skyles’ heirs, in the circuit court', and know that they did not reside on the land in'cpntest; nor had it been held by their tenants, for seven years in succession, by actual residence, and cannot suppose that the original record on which this court decided, contains any statement in the exceptions, that such facts did *362 exist; 1 have not deemed it worth the trouble to examine the original record. The true construction of the act of 1809, which did not take effect until 1816, was never settled until the case of Turner vs. Anderson, 3 Marsh. 131, was decided. Actual settlement on the land was required in that case, which, by all subsequent adjudications, is construed to mean residence; and in that case, for the first time, was the distinction taken between a possession by actual settlement or residence, and a possession by fields or enclosures.
Here McDaniel has proved every thing the law requires ; the lessor of the plaintiff has no pedis possessio within the lap ; and hence, I think, the statute protects him, to the extent of the seventy three acres, on which he is settled, and which is covered by the plaintiff’s eas' tern patent. I think the other members of the court have erred in applying the doctrines of the common law, recognised by numerous decisions of this court, whereby the lessor is construed to be possessed in fact of the interference. I think the statute shews a legislative intent to change those doctrines in cases like this. If the lessor had proved a possession in fact of any part of the interference, independent of construction; in other words, if he had shewn a possession by enclosures or improvements, he would then have brought himself within the rule recognised in the case of Hord vs. Bodley, and others similar. As lie failed to do that, I think he has slept upon his right until he has lost it, to the whole interference,